1

2

3

4

5

6

7               UNITED STATES DISTRICT COURT

8                  EASTERN DISTRICT OF CALIFORNIA

9

GENE EDWARD EVANS,                )       1:09-CV-01857 AWI GSA HC

10                                )
                Petitioner,       )

11                                )       FINDINGS AND RECOMMENDATION
      v.                          )       REGARDING RESPONDENT'S MOTION

12                                )       TO DISMISS
                                  )

13   JAMES A. YATES,              )       [Doc. #11]
                                  )

14                Respondent.     )
     _____)

15

16         Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17   pursuant to 28 U.S.C. § 2254.

18                              **BACKGROUND**

19         Petitioner is currently in the custody of the California Department of Corrections pursuant to

20   a judgment of the Superior Court of California, County of Tulare, following his conviction by jury

21   trial on November 16, 2004, of two counts of forcible oral copulation (Cal. Penal Code

22   § 288a(c)(2)), one count of rape (Cal. Penal Code § 261(a)(2)), one count of kidnap for rape (Cal.

23   Penal Code § 209), one count of penetration with a foreign object (Cal. Penal Code § 289), and one

24   count of carjacking (Cal. Penal Code § 215). (LD[1] 1.)  On February 3, 2005, Petitioner was

25   sentenced to serve an indeterminate term of 301 years to life in state prison. (LD 1.)

26         Petitioner appealed the conviction to the California Court of Appeals, Fifth Appellate District

27

28         [1]"LD" refers to the documents lodged by Respondent in support of his motion to dismiss.

U.S. District Court
E. D. California         cd                      1

1   (hereinafter "Fifth DCA"). On September 29, 2006, the Fifth DCA reduced the sentence by fifty

2   years, but affirmed the judgment in all other respects. (LD 2.) Petitioner then sought review in the

3   California Supreme Court. On December 13, 2006, the California Supreme Court denied review.

4   (LD 3.)

5        On February 7, 2007, Petitioner filed a motion to recall the remittitur in light of Cunningham

6   v. California, 549 U.S. 270 (2007). (LD 4.) On February 15, 2007, the Fifth DCA denied the motion.

7   (LD 4.) Petitioner then sought review in the California Supreme Court. On May 23, 2007, the

8   California Supreme Court granted review and recalled the remittitur. (LD 4.) On September 21,

9   2007, the California Supreme Court dismissed the petition in light of People v. Black, 41 Cal.4th

10  799 (2007). (LD 5.)

11       Petitioner then filed three post-conviction collateral challenges with respect to the pertinent

12  judgment in the state courts as follows:

13       1.   Tulare County Superior Court
              Filed: March 19, 2008[2];
14            Denied: March 27, 2008;

15       2.   California Court of Appeal, Fifth Appellate District
              Filed: May 21, 2008;
16            Denied: June 6, 2008;

17       3.   California Supreme Court
              Filed: August 20, 2008;
18            Denied: March 11, 2009.

19  (LD 7-12.)

20       On October 2, 2009, Petitioner filed the instant federal petition for writ of habeas corpus in

21  this Court. On December 30, 2009, Respondent filed a motion to dismiss the petition as being filed

22  outside the one-year limitations period prescribed by 28 U.S.C. § 2244(d)(1). Petitioner filed an

23  opposition on February 25, 2010. In his opposition, Petitioner claimed, *inter alia*, that he is entitled

24  to equitable tolling due to mental health impairments. On March 4, 2010, Respondent moved for an

25  extension of time in order to secure Petitioner's mental health records and provide a meaningful

26

27       [2]Pursuant to the mailbox rule, the Court deems the various petitions filed on the dates they were signed and
    presumably handed to prison authorities for mailing. Rule 3(d), Rules Governing Section 2254 Cases; Houston v. Lack, 487
28  U.S. 266, 276 (1988); Huizar v. Carey, 273 F.3d 1220, 1222, (9th Cir. 2001).

1   response to Petitioner's claim for tolling. Petitioner objected to the disclosure of his mental records.

2   On April 8, 2010, Respondent filed a reply to the opposition. Respondent addressed all of

3   Petitioner's claims save one, the mental health claim, which Respondent states he could not address

4   without the relevant records. Therefore, on April 15, 2010, in light of the necessity of the mental

5   health records for review of Petitioner's claim, the Court issued an order providing Petitioner with

6   two options: 1) Withdraw his objection; or 2) Abandon his claim for equitable tolling on the basis of

7   mental incompetence. Thereafter, Petitioner moved to withdraw his objection and the Court granted

8   his motion.

9                                      **DISCUSSION**

10  A.  Procedural Grounds for Motion to Dismiss

11          Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a

12  petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not

13  entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

14          The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if

15  the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the

16  state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule

17  4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874

18  F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for

19  state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same).

20  Thus, a respondent can file a motion to dismiss after the court orders a response, and the Court

21  should use Rule 4 standards to review the motion.  See Hillery, 533 F. Supp. at 1194 & n. 12.

22          In this case, Respondent's motion to dismiss is based on a violation of 28 U.S.C. 2244(d)(1)'s

23  one-year limitations period.  Because Respondent's motion to dismiss is similar in procedural

24  standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default

25  and Respondent has not yet filed a formal answer, the Court will review Respondent's motion to

26  dismiss pursuant to its authority under Rule 4.

27  B.  Limitation Period for Filing a Petition for Writ of Habeas Corpus

28          On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

U.S. District Court
E. D. California        cd                              3

1   1996 (hereinafter "AEDPA").  The AEDPA imposes various requirements on all petitions for writ of

2   habeas corpus filed after the date of its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059,

3   2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct.

4   586 (1997).

5          In this case, the petition was filed on October 2, 2009, and therefore, it is subject to the

6   provisions of the AEDPA.  The AEDPA imposes a one-year period of limitation on petitioners

7   seeking to file a federal petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended,

8   § 2244, subdivision (d) reads:

9          (1)  A 1-year period of limitation shall apply to an application for a writ of habeas
    corpus by a person in custody pursuant to the judgment of a State court.  The
10       limitation period shall run from the latest of –

11          (A) the date on which the judgment became final by the conclusion of direct
    review or the expiration of the time for seeking such review;

12
          (B) the date on which the impediment to filing an application created by
13   State action in violation of the Constitution or laws of the United States is removed, if
    the applicant was prevented from filing by such State action;

14
          (C) the date on which the constitutional right asserted was initially recognized by
15   the Supreme Court, if the right has been newly recognized by the Supreme Court and made
    retroactively applicable to cases on collateral review; or

16
          (D) the date on which the factual predicate of the claim or claims presented
17   could have been discovered through the exercise of due diligence.

18          (2) The time during which a properly filed application for State post-conviction or
    other collateral review with respect to the pertinent judgment or claim is pending shall
19       not be counted toward any period of limitation under this subsection.

20   28 U.S.C. § 2244(d).

21          In most cases, the limitations period begins running on the date that the petitioner's direct

22   review became final.  In this case, the final petition for review was denied by the California Supreme

23   Court on September 12, 2007.  Thus, direct review concluded on December 11, 2007, when the

24   ninety (90) day period for seeking review in the United States Supreme Court expired. Barefoot v.

25   Estelle, 463 U.S. 880, 887 (1983); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999); Smith v.

26   Bowersox, 159 F.3d 345, 347 (8th Cir.1998).  The statute of limitations commenced on the following

27   day, December 12, 2007, and expired one year later on December 11, 2008. Patterson v. Stewart, 251

28   F.3d 1243, 1246 (9th Cir.2001). Here, Petitioner delayed filing the instant petition until October 2,

U.S. District Court
E. D. California        cd                                    4

1  2009, exceeding the due date by 295 days.  Absent any applicable tolling, the instant petition is

2  barred by the statute of limitations.

3  C.  Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

4        Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application

5  for State post-conviction or other collateral review with respect to the pertinent judgment or claim is

6  pending shall not be counted toward" the one year limitation period.  28 U.S.C. § 2244(d)(2). In

7  Carey v. Saffold, the Supreme Court held the statute of limitations is tolled where a petitioner is

8  properly pursuing post-conviction relief, and the period is tolled during the intervals between one

9  state court's disposition of a habeas petition and the filing of a habeas petition at the next level of the

10 state court system. 536 U.S. 214, 215 (2002); see also Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir.

11 1999), *cert. denied,* 120 S.Ct. 1846 (2000). Nevertheless, state petitions will only toll the one-year

12 statute of limitations under § 2244(d)(2) if the state court explicitly states that the post-conviction

13 petition was timely, or it was filed within a reasonable time under state law. Pace v. DiGuglielmo,

14 544 U.S. 408 (2005); Evans v. Chavis, 546 U.S. 189 (2006). If the state court states the petition was

15 untimely, "that [is] the end of the matter, regardless of whether it also addressed the merits of the

16 claim, or whether its timeliness ruling was "entangled" with the merits." Carey, 536 U.S. at 226;

17 Pace, 544 U.S. at 414.

18       In this case, the statute of limitations began to run on December 12, 2007. It continued until

19 Petitioner filed his first state habeas petition in the Tulare County Superior Court on March 19, 2008.

20 At that point, 98 days of the limitations period had elapsed. Respondent correctly argues the petition

21 was not properly filed, because the Tulare County Superior Court explicitly stated that "Petitioner

22 failed to raise the issues raised in his writ in a timely manner." (LD 8.) Since the state court ruled the

23 petition was untimely, the petition could not be deemed "properly filed" and therefore could not

24 operate to toll the statute of limitations. Pace, 544 U.S. at 413-414.

25       The second and third petitions were denied without comment or citation to authority. In such

26 a situation, it is presumed that the California Court of Appeal and California Supreme Court denied

27 the petitions for the same reasons expressed by the Tulare County Superior Court. See Ylst v.

28 Nunnemaker, 501 U.S. 797, 803-06 (1991) ("Where... the last reasoned opinion on the claim

1    explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did

2    not silently disregard that bar and consider the merits."). Therefore, the second and third petitions

3    were also not properly filed and did not operate to toll the limitations period.

4           In his opposition, Petitioner argues he should be entitled to interval tolling between the

5    petitions since he did not unduly delay between those petitions. His arguments are without merit

6    since none of the petitions were properly filed; thus, he cannot obtain interval tolling between those

7    petitions. He also argues that the state court's untimeliness ruling should be ignored because he had

8    cause for the delay and can demonstrate prejudice. As correctly argued by Respondent, however,

9    procedural default analysis has no application in determining whether a state petition is "properly

10   filed." In Artuz v. Bennett, the Supreme Court held that "the question of whether an application has

11   been 'properly filed' is quite separate from the question whether the claims contained in the

12   application are meritorious and free from procedural bar." 531 U.S. 4, 9 (2000) (italics omitted).

13   Thus, analysis of the independence or adequacy of a state's procedural bar is not relevant to whether

14   the petition was properly filed. See Gorby v. McNeil, 530 F.3d 1363, 1367-68 (11th Cir.2008), *cert.*

15   *denied*, 2009 WL 578785 (2009) (*per curiam*). As stated above, the state court's determination of

16   untimeliness is "the end of the matter." Carey, 536 U.S. at 226.

17          Accordingly, the limitations period continued uninterrupted until it expired on December 11,

18   2008. The federal petition remains untimely.

19   D.  Equitable Tolling

20          The limitations period is subject to equitable tolling if the petitioner demonstrates: "(1) that

21   he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

22   way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see also Irwin v. Department of Veteran

23   Affairs, 498 U.S. 89, 96 (1990); Calderon v. U.S. Dist. Ct. (Kelly), 163 F.3d 530, 541 (9th Cir. 1998),

24   *citing* Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996), *cert denied*, 522 U.S.

25   814 (1997). Petitioner bears the burden of alleging facts that would give rise to tolling. Pace, 544

26   U.S. at 418; Smith v. Duncan, 297 F.3d 809 (9th Cir.2002); Hinton v. Pac. Enters., 5 F.3d 391, 395

27   (9th Cir.1993).

28          In his opposition, Petitioner argues that during the relevant time period, "he was suffering

U.S. District Court
E. D. California    cd                                      6

1   from a severe mental disorder." (See Petitioner's Opposition at 14.) He claims that he was

2   "prescribed strong psych [sic] medication which put the Petitioner down and incapacitated him."

3   (Id.)

4       1.  Legal Standard

5       Mental incompetency can, in certain circumstances, rise to the level of an "extraordinary

6   circumstance" beyond a petitioner's control that warrants equitable tolling. Laws v. Lamarque, 351

7   F.3d 919, 923 (9th Cir.2003). However, the circumstances must be exceptional. See Rhodes v.

8   Senkowski, 82 F.Supp.2d 160, 168-70, 173 (S.D.N.Y. 2000); also U.S. v. Sosa, 364 F.3d 507, 512

9   (4th Cir.2004) ("As a general matter, the federal courts will apply equitable tolling because of

10  petitioner's mental condition only in cases of profound mental incapacity").

11      In the context of a defendant's ability to stand trial or plead guilty, the term "competence"

12  has been defined to meant that the defendant had "a rational as well as factual understanding of the

13  proceedings against him." Godinez v. Moran, 509 U.S. 389, 400-02 (1993); Dusky v. U.S., 362 U.S.

14  402 (1960). "The focus of a competency inquiry is the defendant's mental capacity; the question is

15  whether he has the *ability* to understand the proceedings." Godinez, 509 U.S. at 401 n.12. A

16  defendant is incompetent only if he "'lacks the *capacity* to understand the nature and object of the

17  proceedings' . . . ." Id., *quoting*, Drope v. Missouri, 420 U.S. 162, 171 (1975). In Laws, the Ninth

18  Circuit signaled approval of the Godinez/Dusky standard of competence in evaluating a petitioner's

19  claim of mental incompetence for equitable tolling purposes. 351 F.3d at 923.

20      In addition, mental incompetency alone is not a per se reason to grant equitable tolling. "Most

21  mental illnesses are treatable, and with proper treatment many, if not most, sufferers are capable of

22  managing their own affairs." Miller v. Runyon, 77 F.3d 189, 191 (7th Cir.1996). Petitioner must

23  show that the alleged mental incompetence "in fact" caused him to fail to file a timely habeas

24  petition. Laws, 351 F.3d at 923.

25      2.  Analysis

26      In support of his allegations of mental incompetence, Petitioner points to mental health

27  records dating from December 2005 through December 2007. As correctly noted by Respondent, the

28  records are incomplete and do not address the relevant time period, which is the limitations period

1   commencing on December 12, 2007, and ending on December 11, 2008. Petitioner has not submitted

2   anything that shows he was incapable of managing his legal affairs in that time. Nevertheless, it is

3   sufficient for Petitioner to have alleged mental incompetence in a verified pleading along with

4   evidence of a possible mental infirmity to merit further factual development. Laws, 351 F.3d at 924.

5          Accordingly, Respondent has lodged with the Court a copy of Petitioner's mental health

6   records for the relevant time period. (LD 13.) Review of these records reveals Petitioner did suffer

7   from a mental health disorder; however, the records do not support a finding that he was incapable of

8   conducting his legal affairs. Petitioner was prescribed Abilify, Prozac and Zydis for treatment of

9   auditory hallucinations and depression. The prescribed medications appeared to help Petitioner

10  manage his mental health complaints. Petitioner described his own well-being ranging from "doing

11  well" to "my depression is bad." Generally, when Petitioner opted to forego the medication, his

12  symptoms would worsen. When he would take the medication, his well-being would improve.

13  Petitioner was on medication for approximately 10 of the 12 months. During the relevant time

14  period, his thought process was observed to be linear. His insight and judgment were generally

15  "good" or "fair" but occasionally "limited." He was also observed to be calm, cooperative, alert, and

16  oriented. His speech and cognitive abilities were within normal limits. In sum, the medical records

17  do not show Petitioner suffered from a debilitating mental health impairment which made him

18  incapable of managing his affairs.

19         Moreover, the record of state habeas filings reflect that Petitioner was in fact able to conduct

20  his affairs. All three of his state habeas petitions were filed during the relevant time period. As

21  Respondent correctly notes, the second habeas petition was filed during the time when Petitioner's

22  symptoms were apparently at their worst, when Petitioner stated he was suffering from bad

23  depression and the treating doctor determined his insight was limited. There is no question Petitioner

24  possessed the mental capability to manage his affairs during the limitations period. Therefore,

25  Petitioner's claim for equitable tolling should be denied. See Gaston v. Palmer, 417 F.3d 1030 (9th

26  Cir.2005), *reh'g granted, opinion modified*, 447 F.3d 1165 (9th Cir.2006).

## RECOMMENDATION

28         Accordingly, the Court HEREBY RECOMMENDS that the motion to dismiss be

1  GRANTED and the habeas corpus petition be DISMISSED with prejudice for Petitioner's failure to

2  comply with 28 U.S.C. § 2244(d)'s one year limitation period.

3          This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United

4  States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule

5  304 of the Local Rules of Practice for the United States District Court, Eastern District of California.

6  Within thirty (30) days after date of service of this Findings and Recommendation, any party may

7  file written objections with the Court and serve a copy on all parties.  Such a document should be

8  captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the

9  Objections shall be served and filed within fourteen (14) days after service of the Objections.  The

10 Finding and Recommendation will then be submitted to the District Court for review of the

11 Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure

12 to file objections within the specified time may waive the right to appeal the Order of the District

13 Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14

15          IT IS SO ORDERED.

16      Dated:   June 21, 2010                    /s/ Gary S. Austin
                                             UNITED STATES MAGISTRATE JUDGE

17
18
19
20
21
22
23
24
25
26
27
28

U.S. District Court
E. D. California        cd                        9